# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:13cv131

| | |
|---|---|
| ANDRE DUBOIS, ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| HENDERSON COUNTY BOARD OF ) | |
| EDUCATION, d/b/a HENDERSON ) | |
| COUNTY PUBLIC SCHOOLS, and ) | |
| STEPHEN PAGE, individually and ) | |
| officially, ) | |
| ) | |
|     **Defendants.** ) | |

Pending before the Court is Defendant's Motion to Dismiss [# 12]. Plaintiff brought this action asserting federal claims pursuant to 42 U.S.C. § 1983 and state law claims for fraud and negligent misrepresentation. All of the claims stem from Plaintiff's resignation as an employee with Defendant Henderson County Board of Education ("Henderson County"). The Court now **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the motion [# 12].

**I.    Background**

Plaintiff is a residence of Henderson County, North Carolina and a former employee of Defendant Henderson County Board of Education. (Pl.'s Compl. at ¶

1, 5.)  Plaintiff worked as a teacher and coach at Henderson High School from 2002 until May 12, 2010.  (Id. at ¶ 5.)   Plaintiff also earned tenure as a teacher through the vote of the Board of Education.  (Id. at ¶ 6.)   The Board of Education employed Defendant Stephen Page as its Superintendent during the relevant time period.  (Id. at ¶ 3.)

During the 2009-10 school year, one of Plaintiff's students began sending him text messages.  (Id. at ¶¶ 15, 18.)   The student expressed that she was having difficulties in her family life and felt depressed and discouraged.  (Id. at ¶ 18.) Plaintiff spoke to the student about these issues at school and also sent her text messages with words of encouragement.  (Id. at ¶¶ 18-19.)   None of the text messages Plaintiff sent the student were inappropriate.  (Id. at ¶ 21.)   The last text message exchanged between Plaintiff and the student was on March 26, 2010.  (Id. at ¶¶ 28-29.)

At some point, the mother of the student contacted the principal of Hendersonville High School and accused Plaintiff of engaging in inappropriate personal communications with her daughter.  (Id. at ¶ 31.)  The mother also stated that she was going to the police in the next 24 hours.  (Id.)  Although the mother did not accuse Plaintiff of any inappropriate touching or physical contact, she told the principal that her daughter had informed her that Plaintiff had texted her

daughter about smoking marijuana together, about Plaintiff getting drunk, and that Plaintiff asked the student to join Plaintiff on a weekend trip. (Id. at ¶ 32.) Neither the student nor the mother had any copies of the alleged text messages. (Id. at ¶¶ 33, 35.) Instead, the mother presented the principal with a copy of a list showing the phone numbers of her daughters incoming and outgoing text messages, which confirmed the fact that Plaintiff had sent and received text messages from the student. (Id. at ¶ 36-37.)

Plaintiff alleges that after learning of the text message and the mother's threats to go to the police, Defendant Page reached an agreement with his management team to get Plaintiff to resign his employment. (Id. at ¶ 39.) In order to accomplish this plan Defendant Page set up a meeting with Plaintiff at the central office. (Id. at ¶ 39.) On May 12, 2010, his assistant principal told Plaintiff to go to the central office during lunch to meet with the principal. (Id. at ¶ 29.) When Plaintiff arrived at the central office, he was escorted into Defendant Page's office, where the Assistant Superintendent, the Director of Human Resources, and Plaintiff's principal were all seated at a table, instead of just meeting with his principal. (Id. at ¶ 30.)

During the meeting, Plaintiff admitted to texting with the student, but stated that the communications were appropriate. (Id. at ¶¶ 41-43.) Although Defendant

Page told Plaintiff that the record of the text messages alone was sufficient grounds for termination (id. ¶ 44), Henderson High School did not have a policy against electronic communications with students at the time, and many teachers at Hendersonville High School used text messages and emails to communicate with students (id. ¶ 45). Defendant Page urged Plaintiff to resign in order to avoid any complications. (Id. ¶ 46.) Defendant Page also stated that he was allowing Plaintiff an opportunity to resign against the advice of counsel. (Id.) Defendant Page even had a resignation form pre-filled out that was only missing Plaintiff's signature. (Id. ¶ 47.)

When Plaintiff told Defendant Page that he had done nothing warranting his resignation and did not know why he should sign the resignation form, Defendant Page informed Plaintiff that if he did not resign, Defendant Page would move forward with dismissal proceedings and would ask the State of North Carolina to revoke Plaintiff's teaching license. (Id. ¶¶ 48-49.) Defendant Page, however, told Plaintiff that if Plaintiff resigned, Defendant Page would ensure that Plaintiff kept his teaching license and that he would be able to teach at other schools with a clean record. (Id. ¶ 50.) Plaintiff then asked if he could speak to an attorney, a representative from the North Carolina Association of Educators, or his wife in order to get some advice regarding whether he should sign the resignation form,

but Defendant Page refused to allow Plaintiff to speak to any of these individuals. (Id. ¶¶ 51-57.) Defendant Page also refused Plaintiff's request to bring the mother or student into the meeting. (Id. ¶¶ 58-59.) Finally, Plaintiff asked if he could speak to his principal and get some advice, but the principal told Plaintiff that he could not help. (Id. ¶¶ 63-64.)

Plaintiff requested some time to think about whether he should resign, and Defendant Page told Plaintiff that he could have some time to decide, but that Plaintiff had to make a decision before leaving the room. (Id. ¶¶ 61-2.) Subsequently, Plaintiff stated that he would sign the form. (Id. ¶ 65.) Defendant Page then handed Plaintiff the pre-filled out form, which Defendant Page had already signed. (Id. ¶ 66.) One of the individuals at the meeting informed Plaintiff that he could go to Henderson High School that evening to get his belongings. (Id. ¶ 67.)

After leaving the meeting, Plaintiff sent the student a text asking her to stop the allegations and stating that he had just lost his job. (Id. ¶ 68.) Later that day, the mother went to the police to report the allegations made by her daughter regarding the text messages. (Id. ¶ 69.) A magistrate then swore out an arrest warrant charging Plaintiff with contributing to the delinquency of a minor. (Id. ¶ 70.)

That evening, Plaintiff went to the school to clean out his belongings, including three prescription pain pills and a pocket knife. (Id. ¶ 72.) Police officers arrived while he was cleaning out his possessions and placed him under arrest. (Id. ¶ 73.) Upon finding the pills and the knife, the officers also charged Plaintiff with felony possession of narcotics and possession of a weapon on school property. (Id. ¶ 74.)

The next day, Defendant Page reported Plaintiff to the North Carolina licensing agency. (Id. ¶¶ 76-77.) The Director of Human Resources sent a letter to the State Superintendent of Public Instruction stating that Plaintiff acted in a grossly inappropriate manner and recommended that the State revoke Plaintiff's teaching certificate. (Id. ¶ 77.)

Later, Plaintiff consulted with an attorney, who drafted a letter to Defendant Page requesting that Plaintiff be allowed to rescind his resignation and be afforded his right to a due process hearing. (Id. ¶ 80.) Defendant Page refused counsel's request to allow Plaintiff to rescind his resignation. (Id. ¶ 81.)

All of the criminal charges against Plaintiff were eventually dismissed. (Id. ¶ 83.) After Plaintiff provided the prescription for the pills and explained the origins of the pocket knife, the possession of narcotics and possession of a weapon on school property charges were dismissed before trial. (Id. ¶ 84.) The trial judge

dismissed the charge of contributing to the delinquency of a minor during the presentation of the State's case after hearing the testimony of the student. (Id. ¶ 85.)

Plaintiff then brought this action asserting a Section 1983 claim against Defendant Page in his individual and official capacities and against Henderson County for violations of Plaintiff's rights as protected by the Fourteenth Amendment to the United States Constitution. (Id. ¶¶ 87-101.) Plaintiff also asserts a fraud and negligence claim against Defendant Page. (Id. ¶¶ 102-116.) Defendant then moved to dismiss the Complaint, and the District Court referred the motion to this Court for a Memorandum and Recommendation. The Motion to Dismiss is now properly before this Court for a Memorandum and Recommendation to the District Court.

## II.     Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering Defendant's motion, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to Plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts

as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for

a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

Where, a party's allegations sound in fraud, however, the allegations must also satisfy the heightened pleading standards of Rule 9. Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008); Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 applies not only to claims asserting common law fraud, but to all claims where the allegations have the substance of fraud. Cozzarelli, 549 F.3d at 629. A claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b). Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999).

**II.  Analysis**

**A.  Plaintiff's Section 1983 Claim**

Plaintiff asserts a cause of action pursuant to Section 1983 against

Defendants based on their alleged deprivation of his right to due process. Specifically, Plaintiff contends that by forcing him to resign, Defendants deprived him of his property interest in his continued employment with the State of North Carolina without due process of law. Defendants contend that the Complaint fails to allege sufficient factual allegations to state a Section 1983 claim against Defendants.

In order to assert a valid claim for either substantive or procedural due process, Plaintiff must first show that he has a constitutionally protected liberty or property interest that was deprived through state action. Stone v. Univ. of Md. Med. Sys. Corp. 855 F.2d 167, 172 (4th Cir. 1988); Royster v. Bd. of Trs. of Anderson Cnty. Sch. Dist. No. Five, 774 F.2d 618, 620 (4th Cir. 1985). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

As the Fourth Circuit has explained, a public employee like Plaintiff has a property interest in his continued employment where his employment can only be terminated for cause. Id.; Royster, 774 F.2d at 620-21. However, where an employee voluntarily resigns and, thus, relinquishes his property right to continued

employment, the employee cannot establish that he was deprived of his property right within the meaning of the due process clause. Stone, 855 F.2d at 173; Young v. Annarino, 123 F. Supp. 2d 915, 925 (W.D.N.C. 2000) (Thornburg, J.). This is true even where a resignation is prompted by events set in motion by his employer, provided that the employee resigned of his own free will. Stone, 855 F.2d at 173.

> If, on the other hand, [the employee's] "resignation" was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause. A public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary "resignations." The proper focus of the constitutional inquiry here is therefore on the voluntariness of [the employee's] resignation. The answer to that factual inquiry is dispositive of the constitutional "deprivation" issue, and potentially of the constitutional claim.

Id.

In determining where a resignation was voluntary, the Court looks to the totality of the circumstances to determine whether the employee was in fact denied the opportunity to make a free choice whether to resign. Id. at 174; Young, 123 F. Supp. 2d at 925-26. Courts have recognized two circumstances where a resignation is involuntary and, therefore, a deprivation under the due process clause. Stone, 855 F.2d at 174. First, a resignation is involuntary where it is obtained by misrepresentation or deception by the employer. Id. Second, a resignation is not voluntary if it is "forced by the employer's duress or coercion."

Id. As the Fourth Circuit explained in Stone, these two circumstances "involve situations in which the employer's conduct has prevented the employee from making a free and informed choice, hence, in our terms, has effectively deprived the employee of his protected property interest." Id.

A resignation is involuntary under the misrepresentation theory where the resignation is induced by the employee's reasonable reliance on a misrepresentation by an employer of a material fact that concerns the resignation. Id. "A misrepresentation is material if it concerns either the consequences of the resignation or the alternate of resignation." Id. (internal citations omitted). In addition, the reliance must be reasonable under the circumstances. Id.

A resignation is involuntary under a the duress or coercion theory where the employer's conduct in requesting that the employee resign, effectively deprived the employee of the ability to make a free choice as to whether to resign his or her position. Id. As the Fourth Circuit explained in Stone:

> Factors to be considered are (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation. *See Taylor v. United States,* 591 F.2d 688, 691, 219 Ct.Cl. 86 (1979) (using factors derived from Federal Personnel Manual). In applying this totality of circumstances test, the assessment whether real alternatives were offered must be gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may

> perceive his only option to be resignation—for example, because of concerns about his reputation—is irrelevant. *See Christie,* 518 F.2d at 587–88. Similarly, the mere fact that the choice is between comparably unpleasant alternatives—e.g., resignation or facing disciplinary charges—does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary. *Id.* This is so even where the only alternative to resignation is facing possible termination for cause, unless the employer actually lacked good cause to believe that grounds for termination existed.

Id.

Applying these principles to this case, Plaintiff, at a minimum, has stated a Section 1983 claim based on a theory of coercion or duress. Plaintiff was first informed of the allegations made by the student and mother at a meeting with Defendant Page and other school officials. Plaintiff was then given the choice of resigning or facing the prospect of dismissal proceedings and Defendant Page would ask the State of North Carolina to revoke Plaintiff's teaching license. Although being faced with comparably unpleasant alternatives does not in and of itself demonstrate that that a resignation was induced by duress or coercion, see id., the additional factual allegations in the Complaint sufficiently state such a claim.

After being informed of his two choices, Plaintiff was provided with a pre-filled out resignation form that was only missing his signature. Plaintiff was not allowed to consult with an attorney, a representative of the teacher's organization to which he belonged, or his wife despite requesting time to do so. In fact, Plaintiff

-13-

was not even allowed to leave the room until he made a decision. Plaintiff was not fully informed about the exact nature of the charges and there are no allegations that he knew his rights at the time. Such allegations are a far cry from the evidence considered by the Fourth Circuit in Stone where the plaintiff was provided an opportunity to consult with an attorney but neglected to do so, was provided ample time to determine his rights, was fully informed of the nature of the charges, was permitted to seek the advice of anyone he wished and did in fact reach out to a friend, and dictated the specific terms of his resignation. Id. at 177. Moreover, once Plaintiff consulted with an attorney after having resigned, Plaintiff attempted to rescind the resignation. The attempt to rescind his resignation adds further support to the claim that his resignation was involuntary. See id. at 178; see also Leardini v. Charlotte-Meclenburg Bd. of Educ., No. 3:09-CV-264, 2011 WL 1499747, at *4 n.1 (W.D.N.C. Apr. 19, 2011) (Mullen, J.) (noting in dicta that the plaintiff's argument that the attempt to rescind his resignation is evidence that the decision was made under duress was compelling). The factual allegations in the Complaint plainly state a Section 1983 claim for a deprivation of due process. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss at to Count One.[1]

---

1  The Section 1983 claim against Defendant Page in his official capacity as Superintendent, however, is redundant of the claims against Henderson County and subject to dismissal. Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir.

**B.     The State Law Claims**

1.     the official capacity claims

In addition to the federal claim, Plaintiff also asserts state law claims for fraud and negligent misrepresentation against Defendants.  "Under the common law, a municipality is not liable for the torts of its employees committed while performing a governmental function."  Edwards v. Akion, 279 S.E.2d 894, 896 (N.C. Ct. App. 1981).  A municipality, however, may waive its immunity by purchasing liability insurance.  Id.  "Immunity is waived only to the extent that the city is indemnified by the insurance contract."  Id.  This immunity also extends to government officials sued in their official capacity.  See Houck & Sons, Inc. v. Transylvania Cnty., 852 F. Supp. 442, 457-58 (W.D.N.C. 1993) (Dupree, J.)  The Complaint, however, must at a minimum allege that Henderson County purchased liability insurance. See  Eller v. Kaufman, No. 2:11cv31, 2012 WL 3018295, n.2 (W.D.N.C. Jul. 24, 2012) (Howell, Mag. J.); Paquette v. Cnty. of Durham, 573 S.E.2d 715, 717 (N.C. Ct. App. 2002) ("In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity.")  The Complaint contains no allegation that Henderson

---

2004).

County purchased an insurance policy that waived its immunity. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to the official capacity state law claims against Defendant Page and the state law claims against Defendant Henderson County.

        2.      <u>the negligence claim against Defendant Page in his individual capacity</u>

Plaintiff also brought a negligence claim against Defendant Page in his individual capacity. A superintendent such as Defendant Page is considered a public official in North Carolina. <u>Gunter v. Anders</u>, 441 S.E.2d 167, 171 (N.C. Ct. App. 1994); <u>see</u> <u>also</u> <u>Farrell v. Transylvania Cnty. Bd. of Educ.</u>, 625 S.E.ed 128, 133 (N.C. Ct. App. 2006). "A public official may only be held personally liable when his tortious conduct falls within one of the immunity exceptions: 1) the conduct is malicious; 2) the conduct is corrupt; or 3) the conduct is outside the scope of official authority." <u>Mabrey v. Smith</u>, 548 S.E.2d 183, 186 (N.C. Ct. App. 2001); <u>Hunter v. Transylvania Cnty. Dept. of Soc. Servs.</u>, 701 S.E.2d 344, 346 (N.C. Ct. App. 2010). The Complaint is devoid of allegations that the alleged negligent act by Defendant Page was corrupt, malicious, in bad faith, or outside the scope of his authority. Accordingly, the negligence claim asserted against Defendant Page in his individual capacity is subject to dismissal. The Court **RECOMMENDS** that the Court **GRANT** the Motion to Dismiss as to the

negligence claim asserted against Defendant Page in his individual capacity.

       3.      the fraud claim asserted against Defendant Page in his individual capacity

A public official is not immune from suit for claims brought against him or her in his or her individual capacity where a Plaintiff alleges the commission of an intentional tort. Beck, 573 S.E.2d at 190. Fraud is an intentional tort. See McCune v. Xerox Corp., 225 F.3d 654 (4th Cir. 2000) (unpublished) (applying Virginia state law); Savage v. N.C. Dep't of Corr., No. 5:06cv171, 2007 WL 2904182, at * 6 (E.D.N.C. Sept. 29, 2007). Accordingly, the public immunity doctrine cannot shield Defendant Page from personal liability from the fraud claim asserted by Plaintiff. See Beck, 573 S.E.2d at 190.

In order to prove a fraud claim under North Carolina law, Plaintiff must establish that the Defendant: (1) made a false representation of material fact; (2) either knew the representation was false or made it with reckless disregard to its truth or falsity; (3) intended for Plaintiff to rely on the representation; and (4) that Plaintiff suffered an injury by reasonably relying on the false representation. Food Lion, Inc. v. Cap. Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999) (applying North Carolina law).

Plaintiff has sufficiently stated a fraud claim against Defendant Page.

Plaintiff alleges that Defendant Page stated to Plaintiff that he could be terminated simply for texting the student and that he would not take any actions to have his license taken by the State of North Carolina if Plaintiff resigned. The Complaint also alleges that these statements were both false, that Defendant Page knew the statements were false when he made them, and were made to induce Plaintiff into resigning. Finally, the Complaint alleges that Plaintiff suffered an injury by relying on the false representations of Defendant Page. This is all that is required for Plaintiff to state a claim for fraud against Defendant Page. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to the fraud claim asserted against Defendant Page in his individual capacity.

### C. Leave to Amend

In his response to the Motion to Dismiss, Plaintiff also request leave to amend the Complaint to correct some of the pleading deficiencies. Pursuant to this Court's Local Rules, however, a party may not include a motion in a responsive brief. LCvR 7.1(C)(2). Instead, a party must set forth each motion in a separately filed pleading with a supporting brief. LCvR 7.1(C)(2), (D). Because the request for leave to amend is not properly before this Court, there is no motion for this Court to rule upon. Moreover, the Court previously entered an Order striking from the record a Motion to Amend as a result of Plaintiff's failure to comply with the

requirements of the Local Rules. (Order, Sept. 17, 2013.) To date, Plaintiff has not filed a proper motion with this Court requesting leave to file an amended complaint.

### III. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the Motion to Dismiss [# 12]. The Court **RECOMMENDS** that the District Court **GRANT** the motion and **DISMISS** the Section 1983 claim asserted against Defendant Page in his official capacity, the state law official capacity claims asserted against Defendant Page, the state law claims asserted against Defendant Henderson County Board of Education, and the negligence claim asserted against Defendant Page in his individual capacity. The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 12] as to the remaining claims.

Signed: January 3, 2014

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).